**Ralph ABED, Petitioner–Appellant,**

**v.**

**John J. ARMSTRONG, Commissioner, Department of Corrections, State of Connecticut, Respondent–Appellee.**

**Docket No. 99–2086**

United States Court of Appeals, Second Circuit.

Argued: Dec. 10, 1999

Decided: April 3, 2000

---

William Emmett Dwyer, Connecticut Legal Rights Project, Waterbury, Connecticut, for Petitioner–Appellant.

Gregory T. D'Auria, Assistant Attorney General (Richard Blumenthal, Attorney General, Steven R. Strom, Assistant Attorney General, of counsel), Hartford, Connecticut, for Respondent–Appellee.

Before: WINTER, Chief Judge, PARKER, and SOTOMAYOR, Circuit Judges.

WINTER, Chief Judge:

Ralph Abed appeals from Magistrate Judge Martinez's adverse grant of summary judgment dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that an administrative directive adopted by appellee violates the Ex Post Facto Clause of the U.S. Constitution. He also contends that a Connecticut statute, pursuant to which appellee may award good time credit to inmates on certain conditions, creates a constitutionally cognizable liberty interest sufficient to trigger the protection of the Due Process Clause. For the reasons set forth below, we disagree and affirm.

Appellant was sentenced in Connecticut state court to a ten-year term of incarceration on September 8, 1993. At that time, Connecticut General Statutes § 18–7a(c) provided that an inmate "may" earn a ten-day per month reduction of his sentence—

also known as "good time credit"—"by good conduct and obedience to the rules which have been established for the service of his sentence." Conn. Gen.Stat. § 18–7a(c) (1993).

Three months after appellant was sentenced, on December 10, 1993, appellee issued Administrative Directive 6.14 (the "Directive"). It was intended to regulate and classify inmates who were prison gang members and who, as a result, posed "a threat to the safety of staff, the facility, inmates or the community or the order of the department." Pursuant to the Directive, any prisoner classified as a Security Risk Group Safety Threat Member ("SRGSTM") is not entitled to earn good time credit under § 18–7a(c).

The Directive required that an inmate be given notice and an opportunity to be heard prior to being classified as a SRGSTM and that an "inmate designated as a [SRGSTM] may appeal the designation in writing to the Commissioner (or designee)." The Directive also required that the director of security "review any inmate's designation as a [SRGSTM] as new information requires, or at least every six (6) months, to determine whether the inmate should remain in this status." In addition, the Directive states that an "inmate may request reconsideration, in writing to the Commissioner, whenever circumstances have changed enough to merit review."

Following a hearing conducted on January 24, 1994, appellant was classified as a SRGSTM. He remained classified as such until June 27, 1997. Thus, for a period of approximately forty months, appellant was not entitled to earn good time credit. Appellant unsuccessfully petitioned Connecticut's state courts for a writ of habeas corpus challenging appellee's prospective denial of good time credit during the above period as a violation of the Ex Post Facto Clause and his due process rights. *See Abed v. Commissioner of Correction*, 43 Conn.App. 176, 682 A.2d 558, *certification for appeal denied*, 239 Conn. 937, 684 A.2d 707 (1996).

After certification for appeal to Connecticut's Supreme Court was denied, appellant filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court granted summary judgment against appellant and dismissed the petition. Although the district court held that the Directive did not violate the Ex Post Facto Clause or Due Process Clause, it acknowledged that the issues raised by appellant are "debatable among jurists of reason" and therefore granted a certificate of appealability. This appeal followed.

Appellant argues that the Directive effectively lengthened his sentence and therefore violates the Ex Post Facto Clause. He further claims that Connecticut's good time credit statute creates a liberty interest in earning good time credit of which he was deprived without due process. He seeks as relief a 400–day reduction of his sentence based upon the good time credit that he would otherwise have been eligible to earn while he was classified as a SRGSTM. We address each issue in turn.

■ Article I, Section 10 of the U.S. Constitution provides that "[n]o State shall … pass any … ex post facto Law." This prohibition rests "upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive." *Lynce v. Mathis*, 519 U.S. 433, 440, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 170, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Most issues concerning the Ex Post Facto Clause involve claims, as here, that a law has inflicted "a greater punishment, than the law annexed to the crime, when committed." *Id.* at 441, 117 S.Ct. 891 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). Such laws implicate ex post facto concerns because of "the lack of fair notice and governmental restraint when the legislature increases

punishment beyond what was prescribed when the crime was consummated." *Id.* (quoting *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).

■ "Although the 'presumption against retroactive legislation is deeply rooted in our jurisprudence,' the Ex Post Facto Clause of the Constitution 'applies only to penal statutes which disadvantage the offender affected by them.'" *Doe v. Pataki,* 120 F.3d 1263, 1272 (2d Cir.1997) (quoting respectively *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). To violate the Ex Post Facto Clause, therefore, "a law must be retrospective—that is, 'it must apply to events occurring before its enactment'— and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce,* 519 U.S. at 441, 117 S.Ct. 891 (quoting respectively *Weaver,* 450 U.S. at 29, 101 S.Ct. 960; *Collins,* 497 U.S. at 50, 110 S.Ct. 2715).

Appellant's ex post facto claim fails for several reasons. His argument that the Directive increased his punishment by restricting his eligibility to earn good time credit assumes that before the Directive Section 18–7a(c) automatically entitled all inmates to be eligible to earn good time credit. That assumption is erroneous. Unlike the statutes at issue in both *Weaver* and *Lynce,* Section 18–7a(c) does not automatically confer the right to earn good time credit on all inmates. Rather, the statute states only that inmates "may" earn good time credit, Conn. Gen.Stat. § 18–7a(c) (1993), thereby rendering good time credit a discretionary matter. *See Beasley v. Commissioner of Correction,* 50 Conn.App. 421, 433, 718 A.2d 487 (1998), *aff'd,* 249 Conn. 499, 502, 733 A.2d 833 (1999) (expressly adopting the appellate court's holding and analysis).

In addition, and again unlike *Lynce* and *Weaver,* the Directive was not applied retroactively to appellant. No good time credit earned by appellant prior to the Directive was forfeited, and appellant was not classified as a SRGSTM until after the Directive was in effect. By its terms, the Directive concerned ongoing and future—not past—conduct.

Appellant's reliance on *Nichols v. Warren,* 209 Conn. 191, 550 A.2d 309 (1988), is misplaced. In *Nichols,* the Connecticut Supreme Court held that "[p]rospective forfeiture of unearned good time credit is not permitted under" Section 18–7a(c). 209 Conn. at 204, 550 A.2d 309. The holding in *Nichols,* however, addressed inmates who are eligible to earn good time credit according to prison rules. It thus does not apply to inmates like appellant, who are ineligible for that benefit. *See Beasley,* 50 Conn.App. at 434 n. 9, 718 A.2d 487 (citing *Abed,* 43 Conn.App. at 180, 682 A.2d 558). We therefore affirm the district court's dismissal of appellant's ex post facto claim. *Cf. Hallmark v. Johnson,* 118 F.3d 1073, 1078–79 (5th Cir.1997) (rejecting similar ex post facto claim).

■ We also affirm the dismissal of appellant's due process claim. Appellant contends that he was denied due process because appellee was obliged to provide him with a monthly hearing before denying him eligibility to earn monthly good time credit. To prevail on his due process claim, appellant must establish: (i) that the restraint about which he complains imposes an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); and (ii) that the state grants its inmates, by regulation or statute, a protected liberty interest in remaining free from that restraint. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Even assuming that appellant's ineligibility to earn good time credit imposes an atypical and significant hardship on him, which is doubtful, his claim still fails.

■ Although inmates have a liberty interest in good time credit they have al-

ready earned, *see Wolff v. McDonnell,* 418 U.S. 539, 556–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996) (holding that convicted prisoner with no access to good time credit program because he was incarcerated in county jail had no constitutional interest in the opportunity to earn good time credit); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir.1995) (holding that inmate has no liberty interest in opportunity to earn good time credit); *Conlogue v. Shinbaum,* 949 F.2d 378, 380 (11th Cir.1991) (noting that "[w]hen [a] statute is framed in discretionary terms there is not a liberty interest created" (internal quotations omitted)); *Abed,* 43 Conn.App. at 180–81, 682 A.2d 558 (rejecting appellant's claim that he has cognizable liberty interest in being eligible to earn good time credit).

■ Appellant's due process claim therefore fails because of the absence of a cognizable liberty interest. *See Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 11, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (noting that statute providing "no more than a mere hope that the benefit will be obtained ... is not protected by due process"); *Pugliese v. Nelson,* 617 F.2d 916, 921–22 (2d Cir.1980) ("reject[ing] at the outset the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause").[1]

We therefore affirm.

---

1. Although appellant does not challenge his classification as a SRGSTM, we note that a hearing was held before appellant was classified as a SRGSTM; his status was reviewed every six months; and he had the right to request a reconsideration of his status at any time in writing. There is nothing in the record to suggest that appellant ever requested reconsideration of his status or that appellee failed to review the status every six months as required. *See Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993) ("When an inmate is charged with a rules violation that could lead to the loss of good-time credits ..., at least the 'minimum requirements of procedural due process appropriate for the circumstances must be observed.' " (quoting *Wolff,* 418 U.S. at 558, 94 S.Ct. 2963)). Appellant therefore received all of the process he was due before being classified as a SRGSTM and thereby becoming ineligible to earn good time credits.