[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1030
By his second amended petition, petitioner seeks a writ of habeas corpus. The petition alleges that the respondents have misinterpreted and misapplied the provisions of C.G.S. § 54-125a(b)(2) so as to deprive the petitioner of any access to the statutory parole procedure. It is also claimed that this statute, as amended by Public Act 95-255, is an ex post facto law and is being applied to petitioner as an ex post facto law in violation of the Constitution of the United States. By was of relief, petitioner requests that the court direct the commissioner of correction to calculate his parole eligibility date in accordance with the law in effect at the time of the commission of his offense; direct the commissioner of correction to release the petitioner unless the Board of Parole applies to petitioner the law in effect at the time of the commission of his offense and orders such other relief as law and justice may require. For reasons hereinafter stated, the petition is dismissed.
Respondents have filed a return and set forth defenses. It is admitted in the return that petitioner is being held confined and imprisoned by respondent, commissioner of correction pursuant to a mittimus issued by the Superior Court for the Judicial District of New Haven. They aver that this confinement is lawful. Three affirmative defenses have been interposed by respondents. The first affirmative defense is a claim that the court lacks subject matter jurisdiction over petitioner's eligibility for parole. The second affirmative defense sets forth a claim that the relief sought cannot be granted, and the third affirmative defense claims that petitioner has no right to demand or apply for parole. petitioner has filed a reply to respondents' affirmative defenses sufficient to raise the issues hereinafter considered.
On October 20, 2000, petitioner moved to cite in the Connecticut Board of Parole. This motion was granted without opposition and the Board of Parole became a party respondent. It was further agreed that pleadings already filed would be construed to apply to the Board of Parole.
At the time the case came before the court for trial on October 25, 2000, the parties entered into the following stipulation of facts which was accepted by the court and adopted as the facts relied upon in this decision. Central Coat, Apron Linen Services, Inc. v. Indemnity Ins.Co., 136 Conn. 234, 236 (1949).
 Stipulation of Facts
CT Page 1031
"1. The Board of Parole has classified Michael Durham as a "violent offender" pursuant to C.G.S. § 54-125a and regulations enacted pursuant to P.A. 95-255.
2. Mr. Durham's offense was committed on January 11, 1994.
3. On April 8, 1997, Mr. Durham was convicted pursuant to a finding of guilt under the doctrine of North Carolina v. Alford, 400 U.S. 25
(1970). Judgment was final on sentencing on August 29, 1997.
4. Mr. Durham is classified by the Board of Parole as a violent offender due to his conviction for assault in the first degree in violation of C.G.S. § 53a-59(a)(1), which resulted in a sentence of 20 years suspended after nine and a half years.
5. So classified, Mr. Durham is presently calculated by Department of Corrections to be eligible for parole release after serving 85% of his sentence on August 13, 2005.
6. Under its interpretation of C.C.S. § 54-125a and regulations passed pursuant to, the Board of Parole used the sentencing date to determine that P.A. 95-225 applies to Mr. Durham. Every person classified as a violent offender who was sentenced on or after July 1, 1996 will be required to serve at least 85% of the sentence imposed before being deemed parole eligible.
7. The Board of Parole interprets C.G.S. § 54-125a and regulations passed pursuant to P.A. 95-255 to prohibit Mr. Durham from being eligible for parole before serving at least 85% of his sentence.
8. Mr. Durham will have served 50% of his sentence on April 16, 2000.
9. The Department of Correction has given Mr. Durham 42 days of pre-sentence incarceration credit ("jail credit") against his sentence in accordance with C.G.S. § 18-98d.
10. The Department of Correction has given Mr. Durham 14 days of pre-sentence incarceration good time credit ("jail credit good time") against his sentence in accordance with C.G.S. §§ 18-7a(c) and 18-98(b).
11. To date, Department of Correction has awarded Mr. Durham statutory good time credit at the rate of 10 days per month served in accordance with C.G.S. § 18-7a(c).
12. To date, the Department of Correction awarded Mr. Durham 7-day job credit at the rate of 1 day per week worked in accordance with C.G.S. CT Page 1032 § 18-98a.
13. Mr. Durham has incurred no forfeiture of his sentence credits since his incarceration on August 29, 1997.
14. If Mr. Durham continues to accrue such credits at the present rate without incurring any forfeiture of good time credits, Department of Correction estimates Mr. Durham will discharge his sentence in May 2004.
15. The Connecticut Board of Parole, by letter of Gregory Everett, Parole Supervisor, dated March 22, 2000, has advised Mr. Durham in writing: "Because your sentence receives computation for good time, you will, in fact, discharge from your sentence before you would become eligible for parole."
Petitioner's claim that his Constitutional rights have been violated arise out of the enactment of P.A. 95-255 and the application of that law to his particular situation.
Prior to the enactment of Public Act 95-255, C.C.S. § 54-125a(a) allowed a person convicted of a crime to go at large on parole, in the discretion of a panel of the Board of Parole, if statutory conditions were met. Subsection (b) of this statute provided that no person convicted of any offense committed with a firearm would be allowed on parole until such person had served 50 percent of the sentence imposed. It is clear that prior to Public Act 95-255, § 54-125a(a)(b) allowed the Board of Parole to consider for parole a person who had been convicted of an offense such as petitioner after such person had completed 50 percent of the sentence imposed.
The 1995 session of the General Assembly enacted Public Act 95-255 entitled "An Act Concerning Truth in Sentencing." The act amended subsection (b) of § 54-125 and included the following language:
 (2) A PERSON CONVICTED OF AN OFFENSE, OTHER THAN AN OFFENSE SPECIFIED IN SUBDIVISION (1) OF THIS SUBSECTION, WHERE THE UNDERLYING FACTS AND CIRCUMSTANCES OF THE OFFENSE INVOLVE THE USE, ATTEMPTED USE OR THREATENED USE OF PHYSICAL FORCE AGAINST ANOTHER PERSON SHALL BE INELIGIBLE FOR PAROLE UNDER SUBSECTION (a) OF THIS SECTION UNTIL SUCH PERSON HAS SERVED NOT LESS THAN EIGHTY-FIVE PERCENT OF THE DEFINITE SENTENCE IMPOSED. (3)
Section 2 of the Public Act required the Board of Parole to adopt regulations to ensure that a person convicted of offenses described in the amendment would not be released until he or she had served 85 percent CT Page 1033 of the sentence imposed.
The public act took effect on July 1, 1995, except that § (1) of the act, which included the language above quoted, took effect on July 1, 1996.
A summary of the essential information in the stipulation, put in chronological order in relation to Public Act 95-255, would show that petitioner committed the offense for which he is now incarcerated on January 11, 1994. At the time of the commission of the offense, the law allowed the Board of Parole, to consider for release, persons convicted of such crimes after serving 50% of the sentence imposed. On July 1, 1995, Public Act 95-255 became law and on July 1, 1996, Section 1 of the Act became law. On August 29, 1997, petitioner was convicted of the crime and sentence was imposed.
The Board of Parole uses the sentencing date to determine the applicability of Public Act 95-125 and has established that every person classified as a violent offender who was sentenced on or after July 1, 1996 would be required to serve at least 85% of the sentence imposed before being eligible for parole. Since petitioner's sentencing date was after July 1, 1996, and he has been classified as a violent offender, the Board of parole decided that petitioner is not eligible for parole until he serves 85% of the sentence imposed and has so notified him. Because of credits earned and to be earned, petitioner's release date from confinement would be reached before he completed 85% of his sentence. Therefore, he would never be eligible for parole.
Petitioner claims that Public Act 95-255 is an ex post facto law and it is being applied to him as an ex post facto law in violation of his constitutional rights.
"Article I, Section 10 of the U.S. Constitution provides that no State shall . . . pass any . . . ex post facto Law. This prohibition rests upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive. Most issues concerning the Ex Post Facto Clause involve claims, as here, that a law has inflicted a greater punishment, than the law annexed to the crime, when committed. Such laws implicate ex post facto concerns because of the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.
Although the presumption against retrospective legislation is deeply rooted in our jurisprudence, the Ex Post Facto Clause of the Constitution applies only to penal statutes which disadvantage the offender affected by CT Page 1034 them. To violate the Ex Post Facto Clause, therefore, a law must be retroactive — that is, it must apply to events occurring before its enactment — and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Abed v. Armstrong, 209 F.3d 63, 65 (1 999) (citations omitted, internal quotation marks omitted.)
Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account.Garner v. Jones, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236, 234, 68 U.S. 4230
(2000).
By their first affirmative defense, respondents claim that the court lacks subject matter jurisdiction over the issues raised by the pleadings. Jurisdiction involves the power of the court to hear and determine the cause of action presented to it. LoLacco v. Young,210 Conn. 503, 508 (1989). Whenever the absence of jurisdiction of the court is brought to its attention, the matter must be decided before any further action is taken. Park City Hospital v. Commission on Hospitalsand Health Care, 14 Conn. App. 413, 417 (1988). In State v. Faria,254 Conn. 613, 627 (2000), the defendant argued to the Supreme Court that changes made to C.G.S. § 54-125a by Public Act 95-255 would effect his sentence. The court concluded that the record was insufficient for it to determine whether the change in parole eligibility requirements would effect defendant's sentence. In footnote 16, however, the court did state "we note that the defendant may seek habeas review of the application of the amended parole eligibility requirements to his sentence. . ." The Federal Courts have also expressly sanctioned the invocation of habeas corpus where the injury in question is prejudicing one's right to be considered for parole. Chatman Bey v. Thornburgh, 864 F.2d 804, 807
(1988). The court is also aware that a number of trial courts in this state have determined that subject matter jurisdiction exists where there is a claim of ex post facto application of Public Act 9-255. It must therefore be found that the court does have subject matter jurisdiction to consider this petition.
To fall within the ex post facto prohibition, a law must be retrospective — that is, it must apply to events occurring before its enactment. Lynce v. Mathis, 519 U.S. 433 117 S.Ct. 891, 896,137 L.Ed.2d 63
(1997). A question here exists concerning the date which should be utilized to determine the ex post facto claim. Petitioner argues that the date of the crime should govern. The Board of Parole, however, uses the date of conviction in deciding the applicability of the provisions of CT Page 1035 Public Act 95-255 to a particular prisoner's sentence and respondents claim that this date should be utilized.
Certainly, the date of conviction is logical from an administrative standpoint. It is a date certain and easily verified from the mittimus and court records. The date of the commission of the crime, however, is often less certain. In the information and in warrants, the date of a crime is often described as "on or about" a given date. In certain crimes, embezzlement and sexual abuse of children, for example, the exact date of the crime may be uncertain with criminal activity involving a course of conduct taking place over a period of years.
Although the date of the crime might make sense from an administrative standpoint, the law is clear that in criminal cases in determining whether a substantive change of law applies to a defendant, our Supreme Court has decided that the law in existence on the date of the offense applies. State v. Ross, 230 Conn. 183, 283 (1994), (cert. denied513 U.S. 1165 115 S.Ct. 1133, 130 L.Ed.2d 1095 (1995)); State v.Millhouse, 3 Conn. App. 497, 501 (1985). The doctrine of ex post facto litigation involves a concept of constitutional notice to the criminal before the commission of the crime. Garner v. Jones, supra,120 S.Ct. 1368. It is therefore concluded that the date of the crime is the date which must be utilized to determine if a statute is ex post facto.
There is no Appellate decision in this state on the claims of ex post facto application of Public Act 95-255 by the Board of Parole and there is a dichotomy among the Superior Court decisions on this issue. Charlesv. Warden (Judicial District of Hartford at Endfield, Docket No. CV98-0576815, February 19, 1995); Robinson v. Commissioner (Judicial District of New Haven, Docket No. CV97-405187, February 22, 2000). The cases also differ in their facts. For example, in Cottle v. Warden, (Judicial district of New London, Docket No. 554941, September 27, 2000), the Board of Parole was not a party and the crime was committed prior to the effective date of Public Act 95-255.
The discretion vested in the Board of Parole by the General Statutes is a factor which must be considered here. In Garner v. Jones, supra,120 S.Ct. 1368, the United States Supreme Court stated that the presence of discretion does not displace the protections of the ex post facto clause. The Supreme court then went on to say "On the other hand, to the extent there inheres in ex post facto doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression, see Weaver, 450 U.S. at 28-29, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the CT Page 1036 capacity, and the obligation, to change and adapt based on experience." The discretion vested in the Board of Parole by the Connecticut General Statutes was addressed in Vincenzo v. Warden, 26 Conn. App. 132 (1991). In this case, the Appellate Court addressed the question as to whether a court had subject matter jurisdiction to consider a petition for habeas corpus claiming a right to parole. The court, considering the question as a due process issue, concluded that no liberty interest was implicated in petitioner's claim, therefore, the court lacked subject matter jurisdiction. Id. 133. In arriving at its holding, the court considered the discretionary language of our parole statute, C.G.S. § 54-125, in light of the United States Supreme Court's analysis parole statutes of other states. The court decided that our statute was distinguishable. "Our statute contains no language providing that an inmate shall be released if the two statutory criteria are met. It vests broad discretion in the judgment of the parole board. The statute does not give an inmate any right to demand or even apply for parole. It does not require that a parole board actually consider any inmate's eligibility for parole even if he has fulfilled the statute's two requirements." The court then went on to say "in light of these factors, we hold that § 54-125 also creates no protected constitutional or statutory liberty interest in parole release that gives rise to a claim to illegal confinement in a habeas action." Id., 141, 142.
In reaching its conclusion that the statute does not give an inmate any right to demand or even apply for parole, the Appellate Court relied upon language in § 54-125 that "an inmate may be allowed to go at large in the discretion of the panel of the Board of Parole for the institution in which the person is confined, . . ." This same language is found in C.G.S. § 54-125a (a) which was in effect at the time petitioner committed the offense for which he is now incarcerated.
It must then be concluded that on January 11, 1994, when petitioner committed the crime for which he is now incarcerated, he had actual or constructive, notice of the statute and the broad discretion which it vested in the Board of Parole. In Vencenzo, the Appellate Court held that this statutory discretion was such that it did not give prisoners, such as petitioner, any right to demand or even apply for parole. Since at the time petitioner committed the assault on January 11, 1994, he had no statutory right to parole at all Public Act 95-255 could not detract from any such claimed right which he might have to go before the Board of Parole. He had no such right under the law existing on January 11, 1994. It must then also be concluded that under the circumstances of this case, Public Act 95-255 is not an ex post facto law and is not being applied to petitioner as an ex post facto law in violation of the Constitution of the United States. CT Page 1037
Accordingly, the petition is dismissed.
Joseph J. Purtill, Judge Trial Referee