******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM L. STAFFORD, JR. *v.* COMMISSIONER
OF CORRECTION
(AC 43208)

Prescott, Cradle and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted, in two cases, of the crime of felony
murder on a plea of guilty in each case, sought a writ of habeas corpus,
claiming, inter alia, that the respondent Commissioner of Correction
and the Board of Pardons and Paroles improperly determined that he
was not parole eligible. On the first count of felony murder, which was
alleged to have been committed on June 30 or July 1, 1981, the petitioner
was sentenced to an indefinite term of incarceration of not less than
twenty-five years nor more than life pursuant to statute ((Rev. to 1981)
§ 53a-35). On the second count of felony murder, which was alleged to
have been committed on August 16, 1981, the petitioner was sentenced
to a definite term of incarceration of fifty-five years pursuant to statute
((Rev. to 1981) § 53a-35a). The trial court ordered the sentences to run
concurrently. The petitioner had served the entire length of his definite
sentence of fifty-five years, as reduced by credits he had earned while
incarcerated, by May 28, 2014. He then sought a parole eligibility date
for his indeterminate sentence but was told that he was not eligible for
parole because his determinate sentence, which he had fully served,
was not a parole eligible offense. At his habeas trial, however, S, the
executive director of the board, testified that the petitioner was parole
eligible. Thereafter, the habeas court dismissed the petition, concluding
that it lacked jurisdiction because the petitioner failed to state a claim
involving the deprivation of a recognized liberty interest and that the
issue of obtaining a parole eligibility determination was moot in light
of S's testimony that the board had found the petitioner to be eligible
for parole but declined to grant him a hearing. The court thereafter
granted the petitioner certification to appeal, and the petitioner appealed
to this court. On appeal, the respondent conceded that the petitioner
was eligible for parole. *Held*:

1. This court had jurisdiction to reach the merits of the petitioner's claims,
   as the respondent's concession that the petitioner was parole eligible
   did not render the appeal moot: in his habeas petition, the petitioner
   sought three forms of relief, a declaration by the habeas court that he
   was eligible for parole, an order that the respondent classify him as
   eligible for parole, and a classification by the board and the Department
   of Correction that he was eligible for parole and that they accord him
   consideration based on the criteria set forth in the applicable statute
   (§ 54-125), of which only the final request for relief was arguably satisfied
   by the respondent's concession, thus, this court could order practical
   relief by remanding the case with direction to render judgment that the
   petitioner is parole eligible; moreover, the petitioner's classification as
   a parole eligible inmate was a tangible benefit on which his release
   from prison, pursuant to a finding of parole suitability, was contingent;
   furthermore, the notion that there was no actual controversy between
   the parties on the issue of the petitioner's parole eligibility was belied
   by the existence of the appeal and the lack of a stipulation as to the
   petitioner's eligibility.

2. The habeas court improperly dismissed the petition for a writ of habeas
   corpus as moot; at the habeas trial, although S testified that the petitioner
   was eligible for parole, a representative from the department testified
   that the petitioner would never be eligible, and this conflicting testimony,
   in conjunction with the respondent's closing remarks that it was "not
   entirely clear that this is a parole eligible sentence," indicated that there
   was an ongoing controversy regarding the petitioner's eligibility for
   parole, despite S's testimony.

3. The habeas court erred in concluding that it did not have jurisdiction to
   consider the petitioner's ex post facto claim in his petition: the petitioner
   established a cognizable claim under the ex post facto clause of the
   United States constitution, as he made a colorable showing that the

respondent's and the department's interpretation and application of certain statutes (§§ 53a-38 (b) and 54-125a (b) (1)) that rendered him categorically ineligible for parole on his indeterminate sentence on the first offense created a genuine risk that he would be incarcerated for longer than he would have been under the law that existed at the time he committed the first offense; accordingly, in light of the respondent's concession on appeal that the petitioner is parole eligible, this court granted the petitioner practical relief by directing the habeas court to render judgment declaring the petitioner to be parole eligible and did not reach a determination as to whether the respondent's interpretation and application of § 54-125a to the petitioner's sentence violated the ex post facto clause.

Argued February 11—officially released August 31, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, and tried to the court, *Newson, J.*; judgment dismissing the petition; thereafter, the court granted the petition for certification to appeal, and the petitioner appealed to this court. *Reversed*; *judgment directed.*

*Melissa King* and *Hannah Kogan*, certified legal interns, with whom were *Timothy H. Everett*, assigned counsel, and, on the brief, *Christopher Boyer*, certified legal intern, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Steven R. Strom*, assistant attorney general, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, William L. Stafford, Jr., appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus, which challenged the categorical refusal by the respondent, the Commissioner of Correction, and the initial failure by the Board of Pardons and Paroles (board), to deem the petitioner eligible for parole despite the fact that he is incarcerated for a parole eligible offense.

On appeal, the petitioner claims that the court improperly dismissed his petition on the grounds that (1) the court lacked subject matter jurisdiction because the petitioner failed to state a claim involving the deprivation of a recognized liberty interest, and (2) the petition was rendered moot by a witness' testimony at the habeas trial. We agree with both jurisdictional claims and, accordingly, reverse the judgment of the habeas court and remand with direction to render judgment stating that the petitioner is parole eligible.

The following facts and procedural history are relevant to our disposition of the petitioner's claims.[1] In 1981, the petitioner was charged with two counts of felony murder in violation of General Statutes (Rev. to 1981) § 53a-54c,[2] the first of which was alleged to have been committed on June 30 or July 1, 1981, and the second of which was alleged to have been committed on August 16, 1981. On October 14, 1982, the petitioner entered guilty pleas as to both counts. On the first count, the petitioner was sentenced to an indefinite term of incarceration of not less than twenty-five years nor more than life pursuant to General Statutes (Rev. to 1981) § 53a-35.[3] On the second count, the petitioner was sentenced to a definite term of fifty-five years of incarceration pursuant to General Statutes (Rev. to 1981) § 53a-35a.[4] The court ordered the sentences to run concurrently. "The petitioner 'maxed out' on the fifty-five year sentence on May 28, 2014, and is deemed to have been 'released' from that conviction."[5] Just prior to the expiration of that sentence, the petitioner submitted the first of three inmate request forms to Institutional Parole Officer Vadnais (IPO Vadnais),[6] seeking a parole eligibility date for his indeterminate twenty-five years to life sentence. IPO Vadnais responded to all three requests, indicating each time that the petitioner was not eligible for parole on the indeterminate felony murder sentence because the determinate felony murder sentence was not a parole eligible offense.[7]

Subsequently, the petitioner filed a petition for a writ of habeas corpus as a self-represented litigant. On May 10, 2016, the petitioner, through counsel, filed an amended petition for a writ of habeas corpus alleging that the respondent improperly determined that the petitioner is not parole eligible, despite the fact that he is currently incarcerated for a parole eligible offense

pursuant to General Statutes § 54-125, which constitutes a violation of the petitioner's rights under the due process and ex post facto clauses of the United States constitution. The relief requested in the amended petition includes, inter alia, (1) a declaration by the court that the petitioner is eligible for parole, (2) an order that the respondent classify the petitioner as eligible for parole, and (3) that the board and the Department of Correction (department) classify the petitioner as parole eligible and accord him consideration in accordance with the criteria set forth in § 54-125.[8] The respondent filed a return on July 9, 2018, in which he alleged as a "defense" that the petitioner is not eligible for parole consideration.

At the petitioner's habeas trial, on February 26, 2019, three witnesses testified: (1) Michelle Deveau, a records specialist with the department; (2) Richard Sparaco, the executive director of the board; and (3) the petitioner. Specifically, Deveau testified, inter alia, that the department generates a parole eligibility date for the board that is based on relevant statutes and her office's calculations. She acknowledged that the presentence investigation report prepared at the time of the sentencing of the petitioner[9] stated that "[u]nfortunately [for] . . . society [the petitioner] will be eligible for parole in the future." Nevertheless, Deveau testified that the petitioner was not, and would never be, eligible for parole pursuant to General Statutes §§ 53a-37,[10] 53a-38 (b),[11] and 54-125a[12] because, even though the petitioner reached the maximum term of his definite sentence, that sentence still serves as a bar to the petitioner's parole eligibility on the indeterminate sentence.[13]

By contrast, Sparaco testified, inter alia, that the petitioner is parole eligible because, when his fifty-five year sentence reached its maximum, on May 28, 2014, the petitioner was left to serve only his indeterminate sentence, which was imposed for a parole eligible offense pursuant to § 54-125. Sparaco's testimony in this regard was contrary to what the respondent had indicated Sparaco's opinion would be in his expert witness disclosure. Sparaco explained, in his testimony, that "[p]arole eligibility is the gateway to a hearing," it is statutorily determined, and the board does not exercise discretion in determining eligibility. Sparaco further testified that (1) he became aware of the petitioner's case in 2015 because of the present habeas litigation, (2) the board did not receive notice of the petitioner's eligibility from the department "as we do with many other cases," (3) the board has determined that the petitioner is parole eligible, and (4) the board has not reached a conclusion as to whether the petitioner should be afforded a parole hearing.[14]

Following the habeas trial, the court issued a memorandum of decision and dismissed the petition. The court concluded that the petitioner's claims were not

justiciable for two reasons: (1) the petitioner has failed to state a claim involving the deprivation of a recognized liberty interest and, thus, has failed to state a claim over which the habeas court has jurisdiction; and (2) the issue of obtaining a parole eligibility determination has become moot because there is no longer a viable dispute in light of Sparaco's testimony that the board has found the petitioner to be eligible for parole but has declined to grant him a hearing. The petitioner then filed a timely motion for reconsideration, which the court denied. Subsequently, the petitioner filed a petition for certification to appeal, which the court granted on May 28, 2019.

On December 11, 2019, the petitioner filed a motion for articulation, seeking further explanation as to why the habeas court did not address whether it had jurisdiction to decide the petitioner's ex post facto claim, as distinct from his due process claim, and to clarify certain findings with respect to its conclusion that the petition was moot. The court denied the motion for articulation, and the petitioner sought review from this court pursuant to Practice Book § 66-5.[15] This court granted the motion for review but denied the relief requested therein. This appeal followed. On appeal, the respondent concedes that the petitioner is parole eligible. Additional facts will be set forth as needed.

I

As an initial matter, before addressing the petitioner's claims, we first discuss whether, in light of the respondent's concession before this court that the petitioner is parole eligible, this appeal is moot. We conclude that it is not.

The following legal principles guide our review. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *Renaissance Management Co.* v. *Barnes*, 175 Conn. App. 681, 685–86, 168 A.3d 530 (2017). "[I]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua

sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

"Under our well established jurisprudence, [m]ootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . In other words, the ultimate question is whether the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 178 Conn. App. 191, 194, 174 A.3d 860 (2017). "[W]hen, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Gainey* v. *Commissioner of Correction*, 181 Conn. App. 377, 383, 186 A.3d 784 (2018).

In his habeas petition, the petitioner specified that the form of relief he was requesting was (1) a declaration by the court that he is eligible for parole, (2) an order that the respondent classify him as eligible for parole, and (3) that the board and the department classify him as eligible for parole and accord him consideration in accordance with the criteria set forth in § 54-125. Only the last of these forms of relief has arguably been satisfied by the respondent's concession.[16] As such, this court can order practical relief by remanding the case with direction to render judgment that the petitioner is parole eligible. This is the principal form of relief that the petitioner has sought. Moreover, the respondent indicated to the habeas court that it too is "seeking [the court's] guidance in whether or not this is a parole eligible sentence . . . . [I]t's not entirely clear that this is a parole eligible sentence."

In our view, the petitioner would benefit from a judicial determination of eligibility because it is an enforceable judgment that would ensure that the petitioner would not need to seek such a declaration by a court in the future if the respondent or the department were again to change their position regarding whether the petitioner is parole eligible. In the absence of such a judicial determination, in light of the long-standing confusion on the issue of the petitioner's parole eligibility by the board and the department,[17] we are not convinced that the respondent's concession is sufficient to ensure that the petitioner is deemed parole eligible for all relevant future purposes. As of the date of oral argument to this court, the petitioner had not received any formal indication or writing from either the board or the department that he is parole eligible.[18]

Moreover, as Sparaco aptly explained in his testi-

mony, "Parole eligibility is the gateway to a hearing." Even assuming arguendo that the board has declined to grant the petitioner a parole hearing, which is indisputably in its discretion to do, the petitioner could later be granted a follow-up review and be found suitable for parole.[19] See *Baker* v. *Commissioner of Correction*, 91 Conn. App. 855, 859 n.6, 882 A.2d 1238 (2005) ("Eligibility for parole and suitability for parole release are two distinct concepts . . . . [P]arole eligibility means that the prisoner may be considered by the board for release, whereas suitability is the determination by the board that the prisoner is actually entitled to release under the relevant guidelines."), rev'd in part on other grounds, 281 Conn. 241, 914 A.2d 1034 (2007). As such, the petitioner's classification as a parole eligible inmate is a tangible benefit on which his release from prison is contingent and, at this point, the petitioner still has not received the one thing he consistently has requested: an enforceable judgment stating that he is parole eligible.

We further note that the notion that no actual controversy between the parties exists regarding the issue of the petitioner's eligibility is somewhat belied by this appeal. That is to say, if there truly is no dispute between the parties on the issue of the petitioner's parole eligibility, the parties could have so stipulated at any time, or the respondent could have confessed to a judgment in the petitioner's favor in the habeas court. For these reasons, we conclude that this appeal is not rendered moot by the respondent's concession that the petitioner is parole eligible, and we have jurisdiction to reach its merits.

## II

One of the petitioner's claims on appeal is that the habeas court improperly concluded that the petition was rendered moot by Sparaco's testimony that the board has found the petitioner to be eligible for parole but has declined to grant him a hearing. With respect to this claim, we rely on the jurisdictional principles and the standard of review set forth in part I of this opinion. For many of the same reasons we concluded in part I of this opinion that this appeal is not moot, we agree with the petitioner that the habeas court improperly dismissed the underlying petition as moot.

As previously mentioned, in the petitioner's habeas petition, he specified that the form of relief he was requesting was (1) a declaration by the court that he is eligible for parole, (2) an order that the respondent classify him as eligible for parole, and (3) that the board and the department classify him as eligible for parole and accord him consideration in accordance with the criteria set forth in § 54-125. None of these forms of relief was provided by virtue of Sparaco's testimony that *the board* has determined that the petitioner is parole eligible.

At the habeas trial, there was no indication that the department deems the petitioner to be parole eligible. Three times the petitioner submitted an inmate request form to the department, specifically to IPO Vadnais, seeking a parole eligibility date, and three times he was told that he was not eligible for parole. The only representative from the department to testify, Deveau, stated unequivocally that, based on her office's calculations, the petitioner would never be eligible for parole. Moreover, Sparaco clearly testified that the board had not received anything from the department regarding the petitioner, such as his name on a list of individuals who are eligible for parole, "as it does with many other cases." Sparaco only became aware of the issue regarding the petitioner's parole eligibility after the petitioner initiated this habeas action, which was six or more months after the petitioner's definite term reached its maximum and, in Sparaco's view, the petitioner became parole eligible. This conflicting testimony,[20] in conjunction with the lack of any evidence to suggest that the department deems the petitioner parole eligible, indicates that there was still an ongoing controversy after Sparaco's testimony. Likewise, the respondent's closing argument to the habeas court further indicates that Sparaco's testimony did not resolve the issue of whether the petitioner is parole eligible. Specifically, the respondent stated in his closing argument, "[T]he board is seeking [the court's] guidance in whether or not this is a parole eligible sentence . . . . [I]t's not entirely clear that this is a parole eligible sentence." Accordingly, we conclude that the court improperly concluded that the case was moot.

III

Finally, we address the petitioner's claim on appeal that the habeas court improperly concluded that it lacked subject matter jurisdiction on the basis that the petitioner failed to state a claim involving the deprivation of a recognized liberty interest. The petitioner argues that the court's conclusion in this regard does not account for his ex post facto claim, which is distinct from his due process claim, over which the court has jurisdiction irrespective of whether the petitioner has alleged an impairment of a vested right. Specifically, the petitioner maintains that the respondent has interpreted and applied § 54-125a, which was not enacted until 1990, to his sentence in a way that violates the ex post facto clause. We conclude that the petitioner has alleged a cognizable ex post facto claim that is sufficient to invoke the jurisdiction of the habeas court.

We begin by setting forth certain governing principles of law as well as our standard of review. "Whether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary." *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 553, 223 A.3d 368 (2020).

"[When] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 566, 941 A.2d 248 (2008). "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016).

"The ex post facto clause of the United States constitution prohibits retroactive application of a law that inflicts a greater punishment, than the law annexed to the crime, when committed. . . . In other words, the clause forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." (Citation omitted; internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, 330 Conn. 462, 470, 196 A.3d 789 (2018). "To establish a cognizable claim under the ex post facto clause, therefore, a habeas petitioner need only make a colorable showing that the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 818, 786 A.2d 1091 (2002).

"In addition it is firmly established that statutes governing parole eligibility are part of the law annexed to the crime for ex post facto clause purposes. . . . As the United States Supreme Court explained in [*Warden* v. *Marrero*, 417 U.S. 653, 658, 94 S. Ct. 2532, 41 L. Ed. 2d 383 (1974)], [a]lthough . . . the precise time at which the offender becomes eligible for parole is not part of the sentence . . . it is implicit in the terms of the sentence. And because it could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole, or that such decisions would not be drastically affected by a substantial change in the proportion of the sentence required to be served before becoming eligible, parole eligibility can properly be viewed as being determined— and deliberately so—by the sentence of the [court]." (Citations omitted; internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, supra, 330 Conn. 472.

"Furthermore, [t]he United States Supreme Court has recognized that a law *need not impair a vested right to violate the ex post facto prohibition*. Evaluating whether a right has vested is important for claims under the [c]ontracts or [d]ue [p]rocess [c]lauses, which solely

protect [preexisting] entitlements. . . . The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the [e]x [p]ost [f]acto [c]lause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." (Emphasis added; internal quotation marks omitted.) Id., 471. "Thus, to determine whether a habeas court has subject matter jurisdiction over a petitioner's ex post facto claim, [t]he controlling inquiry . . . [is] whether retroactive application of the change in [the] law create[s] a sufficient risk of increasing the measure of punishment attached to the covered crimes. . . . [A] habeas petitioner need only make a colorable showing that the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." (Internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, 199 Conn. App. 406, 421, 236 A.3d 276, cert. denied, 335 Conn. 969, 240 A.3d 286 (2020).

In the present case, the law in effect when the petitioner committed the two felony murders at issue was such that the sentence for any felony murder committed prior to July 1, 1981, was to be indeterminate, whereas, the sentence for any felony murder committed on or after July 1, 1981, was to be definite. See General Statutes (Rev. to 1981) §§ 53a-35 and 53a-35a. Moreover, pursuant to § 54-125, a person serving an indeterminate sentence becomes eligible for parole after having served the minimum term. See footnote 7 of this opinion. The petitioner was sentenced in accordance with these statutes; namely, he received an indeterminate sentence of twenty-five years to life for a felony murder committed prior to July 1, 1981, and a definite sentence of fifty-five years for a second felony murder committed after July 1, 1981, to be served concurrently. Moreover, as reflected in the presentence investigation report, the petitioner was deemed to be eligible for parole in the future.

Despite the petitioner's having fully served the definite sentence and having served the minimum term of the indeterminate sentence, the department has informed him on numerous occasions that he is not eligible for parole on the indeterminate sentence that he is currently serving. The department's position, as explained by Deveau at the habeas trial, is that the petitioner is not parole eligible because (1) pursuant to §§ 53a-37 and 53a-38 (b), the term of the two sentences has merged and will not be deemed satisfied until the longest term, in this case the life sentence, has run, and (2) pursuant to § 54-125a (b) (1), which only became effective on October 1, 1990, a person who received a

definite sentence after having been convicted of a felony murder committed on or after July 1, 1981, is categorically ineligible for parole, even for a separate, parole eligible offense. The petitioner maintains that the department's interpretation and application of these statutes is inaccurate[21] and effectively transforms the petitioner's sentence into one of life imprisonment without the possibility of parole, which is a more severe punishment than that assigned by law when the petitioner committed the felony murders at issue and, thus, it violates the ex post facto clause.[22]

Our Supreme Court has clearly expressed that due process claims are distinct from ex post facto claims in that "a law need not impair a vested right to violate the ex post facto prohibition." (Internal quotation marks omitted.) *Breton* v. *Commissioner*, supra, 330 Conn. 471; see *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 817–19; see also *Baker* v. *Commissioner of Correction*, supra, 91 Conn. App. 862–63. Accordingly, in the present case, it was improper as a matter of law for the habeas court to conclude that the petitioner "has failed to state a claim involving the deprivation of a recognized liberty interest, so he has failed to state a claim over which the habeas court has jurisdiction." (Internal quotation marks omitted.) Such a conclusion fails to account for the petitioner's ex post facto claim, which the habeas court made note of in the procedural history portion of its decision but did not address further.[23]

In addition, we conclude that the petitioner has established a cognizable claim under the ex post facto clause because he has made a colorable showing that the department's interpretation and application of §§ 53a-38 (b) and 54-125a (b) (1) creates a genuine risk that he will be incarcerated longer than he would have been under the law that existed at the time he committed the offenses at issue. That is, at the time the petitioner committed the first felony murder, the sentence for that offense was indeterminate and parole eligible. Subsequent to the commission of both felony murders and the petitioner's sentencing for those crimes, § 54-125a was enacted and has served as the basis for the department's view that the petitioner's second felony murder conviction renders him ineligible for parole on his first felony murder conviction. Thus, the department's interpretation and application of § 54-125a creates a genuine risk that the petitioner will be incarcerated for the rest of his life without the possibility of parole, for what was originally a parole eligible sentence. Accordingly, the habeas court had jurisdiction to consider the petitioner's ex post facto claim, and it was error for the court to conclude otherwise.

In light of the respondent's concession on appeal, and the fact that there are no other material facts in dispute, it is not necessary to remand this matter for a

trial in the habeas court. Moreover, because we can grant practical relief by directing the habeas court to render a judgment declaring the petitioner to be parole eligible, we need not determine whether the respondent's prior interpretation and application of § 54-125a to the petitioner's sentence violates the ex post facto clause.

The petitioner had to wait almost five years after becoming parole eligible for a trial on the issue of whether he is, in fact, parole eligible. By reversing and remanding this case with direction to render judgment that the petitioner is parole eligible, we will ensure that he does not have to seek this same declaration from a court again in the future and that both the respondent and the board will treat him as such.

The judgment is reversed and the case is remanded to the habeas court with direction to render judgment stating that the petitioner is parole eligible.

In this opinion the other judges concurred.

[1] We rely on the facts as found and set forth by the habeas court in its memorandum of decision as well as on undisputed facts disclosed in the record.

[2] General Statutes (Rev. to 1981) § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[3] General Statutes (Rev. to 1981) § 53a-35 provides in relevant part: "(a) For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d).

"(b) The maximum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, life imprisonment . . . .

"(c) Except as provided in subsection (d) the minimum term of an indeterminate sentence shall be fixed by the court and specified in the sentence as follows: (1) For a class A felony, the minimum term shall not be less than ten nor more than twenty-five years . . . ."

[4] General Statutes (Rev. to 1981) § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . .

"(2) for the class A felony of murder, a term not less than twenty-five years nor more than life . . . ."

[5] "The petitioner 'maxed out' his sentence through the earning [of] certain 'good time' and job credits to reduce his term of incarceration . . . ." In other words, the petitioner served the entire length of his fifty-five year sentence, as reduced by good conduct credits and job credits that he earned while incarcerated. See General Statutes §§ 18-7a and 18-98a.

[6] This individual's first name was not provided.

[7] Two parole statutes are at issue because of the dates of the underlying offenses: General Statutes §§ 54-125 and 54-125a. Section 54-125 provides in relevant part: "Any person confined for *an indeterminate sentence*, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than the minimum term imposed by the court, less such time as may have been earned under the provisions of section 18-7, *may be allowed to go at large on parole* in the discretion of

the panel of the Board of Pardons and Paroles for the institution in which the person is confined, if (1) it appears from all available information, including such reports from the Commissioner of Correction as such panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society. . . ." (Emphasis added.)

Section 54-125a provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or total effective sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the total effective sentence less any risk reduction credit earned under the provisions of section 18-98e or one-half of the most recent sentence imposed by the court less any risk reduction credit earned under the provisions of section 18-98e, whichever is greater, may be allowed to go at large on parole . . . .

(b) (1) No person convicted of any of the following offenses, which was *committed on or after July 1, 1981*, shall be eligible for parole under subsection (a) of this section . . . (C) felony murder, as provided in section 53a-54c . . . ." (Emphasis added.)

[8] Specifically, the amended petition states: "That the Office of Pardons and Paroles in the [d]epartment . . . classify the petitioner as a parole eligible inmate and accord him consideration in accordance with the criteria set forth in . . . § 54-125." It thus appears that the petitioner was operating under the mistaken belief that the board is a part of the department, as opposed to a separate and distinct entity. We interpret the petitioner's request for relief as applying to both entities.

[9] Presentence investigation reports are prepared by the Office of Adult Probation.

[10] General Statutes § 53a-37 provides in relevant part: "When multiple sentences of imprisonment are imposed on a person at the same time . . . the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. . . ."

[11] General Statutes § 53a-38 (b) provides in relevant part: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under *more than one definite sentence*, the sentences shall be calculated as follows . . . If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." (Emphasis added.)

[12] At the time that the petitioner committed the offenses at issue, and at the time he was sentenced, § 54-125a had not yet been enacted. It was enacted in 1990.

[13] Deveau also testified that she did not take General Statutes § 53a-35c into account when calculating the petitioner's parole eligibility. Section 53a-35c provides: "The sentence of life imprisonment without the possibility of release shall not be available as a sentence for an offense committed prior to October 1, 1985."

[14] The following colloquy ensued:

"[The Petitioner's Counsel]: Has [the petitioner] been accorded a parole hearing or a parole review by your office?

"[Sparaco]: He has not been reviewed by my office for a, even given hearing.

* * *

"[The Petitioner's Counsel]: Okay. And do, have you evaluated whether the court has adequate information to accord [the petitioner] a hearing?

"[Sparaco]: Yes.

"[The Petitioner's Counsel]: And what is your conclusion at this point?

"[Sparaco]: We have not made the conclusion because we have—the answer to that question has not completely been provided to me. It's if we have enough information or we don't have enough information to proceed with a hearing."

[15] Practice Book § 66-5 provides in relevant part: "The sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion [for articulation] . . . shall be by motion for review under Section 66-7. . . ."

[16] It remains unclear whether the board has reviewed the petitioner for

parole and determined, in its discretion, whether it will afford him a parole hearing. We note that this point relates to the petitioner's suitability for parole, as opposed to his eligibility for parole. See *Baker* v. *Commissioner of Correction*, 91 Conn. App. 855, 859 n.6, 882 A.2d 1238 (2005) ("Eligibility for parole and suitability for parole release are two distinct concepts . . . . [P]arole eligibility means that the prisoner may be considered by the board for release, whereas suitability is the determination by the board that the prisoner is actually entitled to release under the relevant guidelines."), rev'd in part on other grounds, 281 Conn. 241, 914 A.2d 1034 (2007). The petitioner maintains that no suitability determination has been made.

In its memorandum of decision, the habeas court stated in relevant part: "Sparaco . . . testified that the board *conducted a review* of the petitioner's file after it became aware of the habeas action, that the board has found the petitioner to be eligible for parole, but the board *has declined to grant him with a hearing.*" (Emphasis altered; footnote omitted.) On our review of the transcript, however, it seems that Sparaco testified that the board has not reviewed the petitioner for parole, nor has it reached a conclusion as to whether or not the petitioner will be granted a parole hearing. See footnote 14 of this opinion.

Our reading of Sparaco's testimony is further supported by counsel for the respondent's later statement on the record at trial that, based on a conversation he had with Sparaco, it was his belief that, if the petitioner made certain statements on the record, "*I think* [*Sparaco*] *would at least put him in the pipeline for a hearing.* And now the hearing may result in a board saying we don't have enough information to make a decision so we're gonna have to deny the, deny the case or continue the case." (Emphasis added.)

Furthermore, at oral argument to this court, the respondent's counsel represented that Sparaco's testimony is the only evidence in this case that the board has reviewed the petitioner's case and determined that he is not suitable for parole.

[17] The facts of this case exemplify the importance of both the department and the board having the same view on whether an inmate is parole eligible. With respect to which of these two entities has the ultimate authority to determine whether an inmate is parole eligible, we note that General Statutes § 54-124a (f) provides that the board has independent decision-making authority to grant or to deny parole in accordance with a number of statutes, including § 54-125, which is the statute that governs parole of an inmate serving an indeterminate sentence as the petitioner is in this case. Deveau testified, however, that the department is the entity that initially determines the parole eligibility date *for the board.*

The notion that, in practice, the board only begins to consider an inmate's parole eligibility after it receives notice from the department is consistent with Sparaco's testimony. Specifically, he testified that the board had not received any directives or information from the department regarding the petitioner, such as his name on a list of individuals who are eligible for parole "as it does with many other cases." Sparaco only became aware of the issue regarding the petitioner's parole eligibility after the petitioner initiated this habeas action, which was six or more months after the petitioner completed serving his sentence with the definite term and, in Sparaco's view, the petitioner became parole eligible. Therefore, irrespective of the fact that the board has ultimate decision-making authority on the issue of parole eligibility, the facts of this case make clear that, in effect, the department's determination that an inmate is not eligible for parole can prevent the inmate from being deemed parole eligible by the board for a significant period of time, nearly five years in the present case.

[18] The facts underlying this habeas corpus appeal bring to mind the bureaucratic squabbling so brilliantly depicted in the 1985 dystopian film "Brazil."

[19] In this vein, while Sparaco was testifying, the following colloquy ensued between him and the petitioner's counsel:

"Q. So an initial parole eligibility date is different, really, from follow-up parole reviews. Correct?

"A. Could you repeat that one more time? Sorry.

"Q. The initial parole eligibility date for a sentenced inmate is different in kind from follow-up reviews that might be granted after a person's been denied following a hearing?

"A. Yes."

[20] The court specifically characterized the testimony of Sparaco and Deveau as conflicting.

[21] With regard to § 53a-38 (b), the petitioner correctly points out that, by

its plain language, it only applies where a person is "under *more than one definite sentence* . . . ." (Emphasis in original.) With regard to § 54-125a (b), the petitioner maintains that it does not apply to offenses committed prior to July 1, 1981. Moreover, the petitioner argues that there is no indication that the legislature intended to retroactively alter parole eligibility for an indeterminate sentence.

[22] The petitioner also argues that the department's position regarding the petitioner's eligibility violates § 53a-35c, which provides that the sentence of life imprisonment without the possibility of release is not available as a sentence for an offense committed prior to October 1, 1985. See footnote 13 of this opinion.

[23] Specifically, the court stated: "The petitioner asserts that the respondent's categorical refusal to classify him as parole eligible based on the now expired felony murder conviction violates his rights to due process because it has effectively converted the sentence he is now serving, which is parole eligible under . . . § 54-125, into one that is not. He also claims that it violates the prohibition against *ex post facto* laws, because parole eligibility was a component of the sentence imposed by the trial court." (Emphasis in original.) The fact that the court did not set forth its rationale for concluding that it lacked jurisdiction to consider the ex post facto claim in its memorandum of decision or by way of articulation does not hamper our ability to resolve the present claim because the claim rests on undisputed procedural facts and, as we have stated previously in this opinion, the jurisdictional issue presents a question of law over which our review is plenary.